MEADOR, SHERIFF AND TAX COLLECTOR, *v*. MAC-SMITH GARMENT CO.

(Division B. Oct. 2, 1939.)

[191 So. 129. No. 33779.]

Mize, Thompson & Mize, of Gulfport, for appellant.

102

Eaton & Eaton, of Gulfport, for appellee.

Argued orally by **B. E. Eaton,** for the appellee.

**McGehee, J.,** delivered the opinion of the court.

The appellee, claiming a five-year exemption from all ad valorem taxation on a certain garment factory site,

building, machinery and equipment in Harrison County, on the ground that the same was being used in the operation of a new factory and new enterprise of public utility within the meaning of certain statutes hereinafter mentioned, brought this suit and enjoined the appellant, as Sheriff and Tax Collector of said county, from selling or attempting to sell said property for the collection of ad valorem taxes thereon for the year 1937, and also enjoined him from collecting or attempting to collect such taxes for the four succeeding years thereafter. There was a final hearing of the case on bill of complaint, answer, oral and documentary evidence; and whereupon the chancellor rendered a decree making the temporary injunction final and perpetuating the same to the full extent prayed for.

The specific question for decision on this appeal is whether under Chapter 1 of the Laws of Mississippi of the First Extraordinary Session of the Legislature of 1936, as amended by Chapter 18 of the Laws of the Second Extraordinary Session of the Legislature of 1936, the appellee was entitled to an exemption from all ad valorem taxes for a period of five years, from and after December 15, 1936, on the property here involved, as a new factory and new enterprise under the provisions of said statutes extending the exemptions, theretofore provided, to include structures already built and wherein a new factory or new enterprise is operated; and especially where the same structure and ground had theretofore, on February 13, 1929, been granted and had thereafter enjoyed such a period of exemption (including an exemption on the machinery and equipment then being used in connection therewith) while a factory or enterprise of public utility was being operated by a former owner.

At the threshold of such an inquiry there arises, as the primary consideration, the question of whether the industry owned by the appellee constitutes *a new factory and new enterprise*. Therefore, a statement of the

facts upon which the exemptions is claimed is necessary.

On February 13, 1929, the Walcott-Campbell Spinning Company was granted such an exemption on this same factory site and building, including the permanent fixtures and appliances used in connection therewith, for a period of five years from that date; and also on the machinery and equipment then used in the operation of its factory "for making cotton and woolen goods, and especially to engage in the manufacture of cotton and woolen goods, cloths, threads, hosiery, rope and other textile fabrics into the manufacture of which cotton or wool enter." After that factory was operated for some time, and during which period it was devoted exclusively to the work of converting raw cotton into thread for the making of hosiery, the venture proved unsuccessful, and with the result that the factory site, building, fixtures and appliances, machinery and equipment were foreclosed under a mortgage and purchased by one John Bright Lord, thereafter, the factory remained idle for some two or three years and until December 15, 1936. On that date, one Max Harris entered into a written contract with Lord for the purchase of the factory site, building, and also certain permanent fixtures and appliances attached thereto, but by which said contract all of the machinery, furniture, equipment, chattels and other personal property theretofore used or usable in connection with the manufacturing business theretofore conducted in or upon the premises were reserved unto the said Lord with the right to remove the same from the building on or before December 31, 1936. Possession of the factory site, building, etc., so purchased from Lord was to pass immediately to the purchaser Max Harris, subject to the right on the part of Lord to remove the machinery and other personal property reserved as aforesaid within the time stated. The sale price to be paid by Harris was $65,000, a part of which was paid in cash and the remainder in deferred payments. The contract of sale contemplated that the purchaser represented him-

self and certain associates in the transaction, and that the deed was to be made to whomsoever Max Harris might designate as the purchaser; and that the corporation to be designated was to assume liability for the deferred payments. Thereupon, Lord removed all of the personal property, including the machinery theretofore used by the Walcott-Campbell Spinning Company in spinning the raw cotton material into thread for making hosiery, and sold the same to some firm in New Orleans, Louisiana. Upon the execution of said contract of sale, the purchaser, Max Harris, began the organization of a new corporation under the name of Mac-Smith Garment Company (the appellee herein), the charter of which was finally approved on February 1, 1937, under the laws of this State, which new corporation was in the process of organization from and after December 15, 1936. He also began the work of making preparation immediately for installing the new machinery in the building for the operation of a garment factory to be devoted exclusively to the making of mens shirts out of cloth purchased in Virginia and the Carolinas. The new machinery cost approximately $75,000, and the proof discloses that none of it could have been used in the operation of the enterprise formerly conducted in that building by the Walcott-Campbell Spinning Company, since the new machinery consisted of cutting, sewing and pressing machines for making shirts, instead of machines for spinning thread for hosiery. Moreover, the proof further disclosed that none of the machinery which had been used in the spinning mill for making thread was at all suitable for use in any manner in the manufacture of shirts by the new corporation.

Section 1 of Chapter 18 of the 2nd Extraordinary Session of the Legislature, 1936, amending Section 19 of Chapter 1 of the Laws of the 1st Extraordinary Session of 1936, provides that all new factories and new enterprises of public utility shall be exempt from all ad valorem taxes for a period of five years on tangible prop-

erty used in or necessary to the operation of the service or industries enumerated in the Act, including structures already built, the time of such exemption to commence from the time of purchasing the land or structure already built; and then this statute enumerates among the new factories and new enterprises of public utility entitled to the exemption: ''All factories making cotton goods; all woolen mills; all knitting factories; all factories for making hosiery; . . . garment factories . . . all factories for making silk goods or silk products; . . .''.

The term ''garment factories'' used in the enumeration, as distinguished from all factories making cotton goods, factories for making silk goods or silk products, and woolen mills, etc., does not appear in Section 3109 of the Code of 1930, nor in any preceding statute relating to the exemption of new factories and new enterprises of public utility from ad valorem taxation, but appears for the first time in Chapter 1 of the Laws of the 1st Extraordinary Session of the Legislature of 1936, in Section 19 thereof, known as the Act for Balancing Agriculture with Industry. This Act, as shown by the preamble thereof, was designed to relieve unemployment in this State by encouraging and promoting the establishment of new industries within our borders. In the enactment of this statute, the Legislature omitted to extend the exemption to structures which had already been built, where the site and buildings were to be used for the operation of any new factory or new enterprise, notwithstanding that various political subdivisions of the State were thereby authorized and empowered to acquire industrial enterprises, and to issue bonds or other obligations for the purchase thereof. Therefore, the statute was amended at the 2nd Extraordinary Session of the Legislature of 1936, by Chapter 18 of the laws thereof so as to extend the exemption to include structures already built, when used for a new factory and new enterprise designed to relieve unemployment. In the case at bar, the proof dis-

closes that Max Harris purchased the idle factory site, building, and all permanent fixtures and appliances here in question within a few days after the enactment of the statute extending the tax exemption to cover structures already built, and proceeded to establish a new enterprise which is now furnishing employment to approximately 550 persons in full compliance with the spirit and purpose of the legislation in that behalf.

Section 1 of said Chapter 18 of the laws of the 2nd Extraordinary Session of the Legislature of 1936, supra, provides that: "In the event of the purchase of a structure already built for new enterprises of public utility hereafter enumerated, the executive officer or agent of said new enterprise shall make an affidavit showing that said enterprise is in fact a bona fide new enterprise, and shall petition the board of supervisors, . . . setting forth the purposes for which said structures are to be used, and the said board of supervisors . . . shall enter a finding of fact as to whether or not the enterprise represented by the petitioner is in fact a new enterprise of public utility, and said finding shall be entered on the minutes thereof".

It will thus be seen that the Legislature vested the jurisdiction and authority in the board of supervisors to judicially determine whether or not the proposed factory and enterprise was to be such in truth and in fact, instead of an old factory and enterprise merely operating under a new name.

On January 5, 1937, Max Harris caused to be filed through his agent the affidavit and petition provided for by the statute, and obtained from the board of supervisors of Harrison County a finding of fact duly entered on its minutes to the effect that there was then being installed in the structure already built, which is involved in this suit, the machinery for the manufacture of garments; that the property had not been theretofore utilized for such purposes, but had been used at irregular intervals in spinning thread from cotton, thereafter

to be woven into cloth; but that for a period of approximately three years prior to December 5, 1936, the said property had not been used for any purposes; and that the purchase thereof was for the purpose of establishing a new factory and a new enterprise of public utility. The exemption became effective while the property was under the control of Max Harris, who petitioned the board for its finding of fact, and it thereafter inured to the benefit of the Mac-Smith Garment Company, since the statute renders the property itself free of the burden of ad valorem taxation under the circumstances disclosed by this record, without regard to its ownership. It is only required that it be devoted to the purposes enumerated by the statute in order to be exempt.

The finding by the board of supervisors was not appealed from, and the truth of the averments therein contained are challenged for the first time in this proceeding. Wherefore, the appellee contends that the correctness of such finding cannot be here inquired into. But, aside from the question thus presented, we are of the opinion that the proof offered before the chancellor on the hearing amply sustains the contention of the appellee that the factory and enterprise for which the exemption is here claimed for a five-year period beginning December 15, 1936, is in fact a new factory and a new enterprise within the meaning of the statute.

It is contended however that if the exemption from taxation be allowed, it will be in violation of Section 182 of the State Constitution in that the statute fails to prescribe the mode and manner in which the right to such exemption shall be determined, but we are of the opinion that Section 1 of the said Chapter 18 of the Laws of 1936, supra, clearly prescribes the mode and manner in which the exemption is to be determined, and that the statute itself grants the exemption without any further affirmative action by the board when a finding of fact is made by the board of supervisors to the effect that the factory to be operated is in fact a new enterprise of pub-

lic utility. Nor does the date of the commencement of the exemption in the present case violate the said Section 182 of the Constitution, since the work commenced with the preparations for the installation of the new machinery upon the purchase of the old factory site and structure by Max Harris on December 15, 1936, as provided for in Section 1, Chapter 18 of the Laws of 1936, supra. The application of the provisions of this statute in the case at bar so as to sustain the exemption, is, in our opinion, in keeping with the spirit and purpose of this constitutional provision.

It is also insisted by the appellant that since the five-year exemption granted on February 13, 1929, to the Walcott-Campbell Spinning Company authorized and empowered the said company to operate a factory for making cotton goods, the exemption was to a factory or enterprise of the same kind and character as that now operated by the appellee for making shirts, even though the proof offered in the court below showed that the former factory was as a matter of fact engaged only during the period of its operation in spinning raw cotton material into thread for making hosiery, and notwithstanding that such thread could not have been used in the manufacture of shirts. We think that the test is whether the factory now being operated by the present exemptionist is a new factory and new enterprise as compared with that which was actually operated by the former owner, rather than whether the former owner could have operated this same sort of factory or enterprise under the five-year exemption theretofore granted. Moreover, we are of the opinion that the Legislature intended to classify garment factories as a separate and distinct factory or enterprise from factories for making cotton goods, woolen mills, etc. The garment factory does not make cloth, but purchases cloth from distant markets and then manufactures it into shirts by the use of entirely different machinery from that used by the Walcott-Campbell Spinning Company.

Finally, it is insisted that the appellee was not entitled to the exemption because the real estate assessments for the year 1936 and 1937 had been approved and had become final prior to the purchase of the property by the appellee on December 15, 1936. We think that this contention is also without merit, under the facts and circumstances of this case, since the levy of the taxes for the year 1937 and for the remainder of the period of exemption claimed, had not been made by the taxing authorities at the time the exemption was granted, and the obligation to pay the taxes for said years had not accrued on the part of the owner of the property at that time.

We are therefore of the opinion that the appellee was entitled to the relief granted by the decree appealed from.

Affirmed.